UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

```
TENNESSEE COMMERCE BANK,       :
                               :
        Appellant,             :
                               :
        v.                     :   File No. 1:09-CV-82
                               :
ROBERT S. HUTCHINS,            :
                               :
        Appellee.              :
_____:
```

OPINION AND ORDER

I. Introduction

Appellant Tennessee Commerce Bank (TCB) appeals from a January 30, 2009 Order of the United States Bankruptcy Court for the District of Vermont (Bankruptcy Court), which overruled TCB's objections to confirmation of debtor Robert Hutchins' Third Amended Plan treating TCB's claim as unsecured. TCB appeals under 28 U.S.C. § 158(a), which grants this Court jurisdiction to hear appeals from the Bankruptcy Court. For the reasons stated below, the Court affirms the Bankruptcy Court Order.

II. Background

In July 2007, Hutchins borrowed $104,831.58 from TCB. He signed a "Commercial Security Agreement" which listed a Western Star dump truck as collateral for the loan. The truck was subject to a purchase money lien as security for a loan from M&T Credit Services, LLC to Hutchins. Pursuant to a "Disbursement

1

Request and Authorization," TCB sent loan proceeds to M&T to pay off Hutchins' loan. M&T sent the truck's Certificate of Title to Hutchins with a notation and signature meant to release its lien on the truck. Hutchins kept the title with his important papers.

Hutchins filed a Chapter 13 bankruptcy petition on January 31, 2008. In July 2008, he filed a Third Amended Plan (Plan) which listed TCB as an unsecured creditor. In January 2009, the Bankruptcy Court confirmed the Plan over the objection of TCB.

III. Discussion

Federal Rule of Bankruptcy Procedure 8013 establishes the standard governing a district court's review of a bankruptcy court's order. Findings of fact "shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013. A finding is "clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" In re 139-141 Owners Corp., 313 B.R. 364, 367 (S.D.N.Y. 2004) (quoting United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992)). The "clearly erroneous" standard does not allow a reviewing court to set aside a finding because it disagrees with it. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Conclusions of law are reviewed de novo. In re 139-141 Owners Corp., 313 B.R. at 367 (citation omitted).

TCB purports to raise nine separate issues on appeal (Paper 2 at 1-2), but its claims narrow to two essential contentions: the Bankruptcy Court erred (1) in determining Hutchins' Plan was proposed in good faith; and (2) in refusing to apply an equitable doctrine to treat TCB as a secured creditor. Id. at 1-2, 5-8. Hutchins argues his Plan was proposed in good faith and neither the doctrine of equitable subrogation nor equitable estoppel are appropriate; therefore, the Bankruptcy Court correctly confirmed his Plan. (Paper 3.)

   A.   Good Faith Requirement

The Bankruptcy Court's determination that Hutchins' Plan was proposed in good faith is reviewed under the clearly erroneous standard because it is a finding of fact. See Alexander v. Hardeman (In re Alexander), 363 B.R. 917, 924 (B.A.P. 10th Cir. 2007) (citing In re Robinson, 987 F.2d 665, 668 (10th Cir. 1993)). The Bankruptcy Code allows a court to confirm a plan only if the debtor has proposed it in good faith. 11 U.S.C. § 1325(a)(3). Courts examine the totality of the circumstances to determine whether a plan has been proposed in good faith. The focus is on whether there has been an abuse of the provisions, purpose, or spirit of the Bankruptcy Code: A debtor must display "honesty of intention" for a court to find good faith. In re Paley, 390 B.R. 53, 58 (N.D.N.Y. 2008) (citations omitted).

TCB argues Hutchins' Plan was not proposed in good faith because he granted TCB a security interest in the truck and then failed to send TCB the title to the truck. As a result, TCB's security interest was not perfected. (Paper 2 at 12.) Hutchins responds, at the time his petition was filed, TCB's claim was unsecured -- because it had not perfected its security interest in the truck -- and if Hutchins had treated TCB's claim as secured, he would have violated 11 U.S.C. § 1322(b)(1), which prohibits discrimination among unsecured claims. (Paper 3 at 5-6).

Vermont law requires an owner who creates a security interest in a vehicle to name the lienholder on the title and send it with an application and fee for a new title to the lienholder. Vt. Stat. Ann. tit. 23, § 2043(1). The lienholder is then to deliver it to the commissioner of motor vehicles. Id. § 2043(2). A security interest is perfected when the title and application with fee is delivered to the commissioner. Id. § 2042. Compliance with section 2042 is the exclusive method of perfecting a security interest. Id. § 2047; see also In re Farnham, 57 B.R. 241, 244 (D. Vt. 1986).

The Bankruptcy Court found Hutchins' pre-petition failure to comply with the statutory requirement that he send the title to TCB a factor weighing against a finding of good faith. In re Hutchins, 400 B.R. 403, 411 (Bankr. D. Vt. 2009). It also

4

examined TCB's pre-petition conduct and found it contributed to its status as an unsecured creditor by failing to follow up with Hutchins regarding the perfection of its interest. Id. at 412. In determining which party "should bear the brunt of the financial consequences," the court erroneously stated M&T mistakenly sent the title to Hutchins. Id. The court relied on Vt. Stat. Ann. tit. 23, § 2045(a) to presume the "parties intended and expected M&T would release its lien and send the 'clean' certificate of title to TCB." Id. Section 2045(a), however, requires a lienholder, upon satisfaction of a security interest, to deliver the title and release to "the next lienholder named therein." Vt. Stat. Ann. tit. 23, § 2045(a). TCB was not a named lienholder on the title, so section § 2045(b) applied and required M&T to send the title and release to the owner, i.e., Hutchins, or any person authorized by the owner to receive it. Id. § 2045(b).

The Bankruptcy Court's mistaken assumption does not render its finding that Hutchins' Plan was filed in good faith clearly erroneous. The court noted both Hutchins' and TCB's conduct contributed to TCB's unsecured status and, after weighing "the relative sophistication of the parties, the various failures of each party to fulfill their statutory and commercially reasonable duties, and the fact that there is no evidence of any fraud or malicious intent by [Hutchins]," found the Plan was filed in good

faith.[1]  In re Hutchins, 400 B.R. at 413.  Regardless of which party's burden it was to prove -- or disprove -- by a totality of the circumstances that the Plan was filed in good faith, see Papers 2 at 10-11, 3 at 2, the court's focus on the relevant factors and thorough analysis of the issue is sufficient for this Court to affirm the Bankruptcy Court's overruling of TCB's objection to confirmation of Hutchins' Plan on the ground it was not proposed in good faith.

    B.    Equitable Doctrines

TCB also argues the Bankruptcy Court erred in refusing to apply either equitable estoppel or equitable subrogation to deem its claim secured.  (Paper 2 at 18-24.)  TCB bears the burden of proof with regard to application of an equitable doctrine. Turner v. Turner, 305 A.2d 592, 595 (Vt. 1955).  Delay in asserting a right may bar relief in equity, depending on the circumstances of the particular case.  Id.  The question is one of fact.  Id.

---

[1] In a similar case, a bankruptcy court confirmed a plan notwithstanding debtors' pre-petition conduct that included failing to sign the document that would have enabled the creditor to perfect its security interest despite numerous requests. Matter of Hope, 184 B.R. 590, 591, 593 (N.D. Ala. 1995).  The court noted, as here, the debtors (1) did not commit outrageous conduct; (2) were not attempting to escape liability -- they originally listed the creditor as secured but following the trustee's intervention, changed the claim to unsecured; and (3) were proposing to pay creditor a large percentage of its claim.  Id. at 593.  The creditor, like TCB, did not prove intentional fraud in preventing it from perfecting its interest. Id.

1.  <u>Equitable Subrogation</u>

TCB argues equitable subrogation should have been invoked to save its claim.

> Subrogation is an equity [intended to] enabl[e] a party secondarily liable, but who has paid the debt [i.e., the subrogee], to reap the benefit of any securities or remedies which the creditor may hold against the principal debtor. . . . The subrogee must have clear equity and subrogation is defeated by countervailing equities. [] Subrogation will not be enforced to the prejudice of equal or higher rights.

<u>Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.</u>, 318 A.2d 659, 661-62 (Vt. 1974) (citations omitted).

Hutchins argues equitable subrogation is not applicable because TCB was not secondarily liable on the debt to M&T. TCB seeks to step into the shoes of M&T and use its allegedly undischarged perfected security interest in the truck. (Paper 2 at 20.) Hutchins correctly points out TCB was not liable on the debt to M&T. TCB extended credit to Hutchins in exchange for which it intended to take a security interest in the truck as collateral. As part of the transaction, TCB sent an amount sufficient to pay off Hutchins' existing M&T loan on the truck, and M&T had no right to seek payment from TCB on Hutchins' loan if he had failed to pay it. Therefore, TCB was not secondarily liable on Hutchins' debt to M&T and cannot step into M&T's shoes as Hutchins' creditor to convert its unsecured interest in the truck to a perfected secured claim. Even if TCB was eligible to

invoke equitable subrogation, it would lose any right to the doctrine because, as the Bankruptcy Court noted, TCB failed to take "even the most obvious commercially reasonable steps to perfect its lien." In re Hutchins, 400 B.R. at 415.  Therefore, subrogation in TCB's favor is defeated by countervailing equities because application of the doctrine would be to the detriment of the other unsecured creditors.  The Court refuses to apply equitable subrogation to TCB's claim.

### 2. Equitable Estoppel

Equitable estoppel requires active deception or induced reliance that prevents a party from bringing a claim.  Benoit v. Lund, 330 B.R. 105, 112 (D. Vt. 2004); see also Town of Victory v. State, 814 A.2d 369, 373 (Vt. 2002) (stating four elements party invoking equitable estoppel must establish).  Further, equitable estoppel will not be invoked in favor of a party whose own omissions contributed to the problem.  Town of Victory, 814 A.2d at 373 (citation omitted) (holding Town acted unreasonably in failing to inquire into the State's basis for a tax valuation).

TCB relies primarily on In re Rule, 38 B.R. 37 (Bankr. D. Vt. 1983), to support its argument that equitable estoppel should apply to save its unsecured claim and treat it as perfected. (Paper 2 at 14-16.)  The Rule court applied the doctrine because it found the debtor had "thwarted" the creditors efforts to

perfect its secured claim. 38 B.R. at 40. Here, Hutchins did not actively seek to prevent TCB from perfecting its interest in the truck. Most importantly, TCB's failure to take any measures to perfect its lien, including the most basic step of contacting Hutchins to inquire about the title, was not reasonable and contributed to its status as an unsecured creditor. The Court agrees with the Bankruptcy Court's determination that equitable estoppel is not available to TCB.

IV. Conclusion

For the reasons stated above, the Bankruptcy Court's January 30, 2009 Order overruling TCB's objections to confirmation of Hutchins' Plan is AFFIRMED. The court's finding that the Plan was submitted in good faith is not clearly erroneous and TCB did not show entitlement to either equitable subrogation or equitable estoppel to save its claim in the truck from remaining unsecured.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 30th day of July, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge